

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
JATHIYAH VALENTINE,
Plaintiff,
v.
**QUEBEC YOUTH PROTECTION SERVICES, et al.,**
Defendants.
**Case No. 25-CV-5247 (ER)**

## DECLARATION OF JATHIYAH VALENTINE IN SUPPORT OF RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION

I, Jathiyah Valentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

### I. INTRODUCTION

1.      I am the Plaintiff in this action and the biological mother of four minor children: SV, KV, ZV, and AV (my newborn daughter).

2.      I am of Native American descent, and my children are Native American under the Indian Child Welfare Act.

3.      I submit this declaration in support of my emergency motion for immediate return of my children and to provide this Court with the complete factual record.

4.      I am currently residing in New York, New York.

### II. THE FRAUDULENT REMOVAL OF MY NEWBORN DAUGHTER AV due to constitutional violations

5.      I gave birth to my daughter AV on March 14, 2025 in Dallas, Texas. The hospital suspended care for the mother & AV prompting mother to sign out AMA to get emergency. Mother was admitted to Mount Sinai for immediate pre-clamsia

6.      When AV was 11 days old (approximately March 25, 2025), I received a phone call from a CPS worker in Dallas, Texas.

7.      The Texas CPS worker told me they "needed to lay eyes on my baby" to make sure she was okay.

8.      The worker told me that since I had returned to New York, I should go to the New York City ACS office and have a social worker there see the baby.

9.      The worker told me to call her back once AV had been seen by the New York ACS social worker.

10.    **The worker specifically told me: "This is not a removal. We just need to see that the baby is okay and that she is safe."**

11.    Based on this promise, I believed this was just a welfare check and that I would be able to take my baby home with me after they saw she was fine.

12.    On March 25, 2025, I went to the ACS office located at 55 West 125th Street, 11th Floor, as instructed.

13.    I brought AV with me.

14.    When I arrived, I called the Dallas CPS worker as instructed and told her I was at the ACS office waiting for a social worker.

15.    There were plenty of social workers at the office when I arrived.

16.    Despite this, ACS made me wait approximately four hours before anyone would see me.

17.    During this wait, I now believe ACS was arranging for specific caseworkers to come and handle the removal they had already planned.

18.    Finally, two caseworkers arrived: Juanita Smith and another worker. They had come from Lower Manhattan.

19.    **Immediately upon meeting me, they told me they were removing my baby.**

20.    I was shocked because I had been told this was not a removal.

21.    **I asked if they had a court order. They said no.**

22.    **I asked what the emergency was. They said they could see AV was "fine."**

23.    Juanita Smith told me AV was being removed because: a. My other three children were "not in my care" b. Those children had been "removed from me in Canada" c. I have "mental issues"

24.    She called this "derivative neglect."

25.    I immediately explained to her: a. The Canadian case had already been heard by a judge b. The allegations were NOT based on mental health c. The allegations were based on the children being enrolled in school d. The judge had dismissed the case e. The children were in the process of being returned to me

26.    I further explained that: a. Those children were removed in another country b. ACS was not involved in that case c. The case had already been ruled on d. It was improper to take my newborn based on "derivative neglect" from another country's dismissed case

27.    **The caseworkers acknowledged that AV was fine but told me I had to "give up" my baby to them or I would be arrested.**

28.    I turned over my baby under duress as I had no choice because NYPD stated  they would arrest me if I refused.

29.    My baby was only 11 days old and I was scared about what would happen if I was arrested and my inability to defend my case in court the next day after being arrested and severed from my newborn so traumatically.

## III. THE COERCED PSYCHIATRIC EVALUATION finding of Normal

30.    After taking AV, the caseworkers told me I should go to Harlem Hospital to "do a psychiatric assessment."

31.    They had paramedics (EMTs) there at the ACS office.

32.    **The EMTs disagreed with ACS's assessment of the situation.**

33.    I heard the EMTs say "we don't agree with this."

34.    The EMTs called their supervisor.

35.    The supervisor told them there was nothing they could do but suggested I go get evaluated and being that finding to court which I did.

36.    The EMTs were clearly uncomfortable with what ACS was doing.

37.    I went to Harlem Hospital emergency department as instructed.

38.    I waited for many hours.

39.    Hospital staff told me they were "not able to do" the type of assessment ACS was requesting.

40.    **However the Hospital psychiatrist did an assessment on me and wrote in my discharge papers that I was NOT a harm to myself or others.**

41.    The discharge papers noted that a "follow-up assessment would be needed" because they don't do the "ACS required psychiatric evaluations" in the emergency department and they were aware of this and should not have sent me to the Emergency room.

42.    **I now understand that ACS knew the hospital emergency department would not do the full evaluation they supposedly needed and this cost many hours of staying up in the ER awaiting to be seen by their doctor needlessly.**

43.    **ACS sent me there anyway as a pretext to create paperwork suggesting I needed psychiatric evaluation.**

44.    Nevertheless, the psychiatrist who saw me at the hospital assessed me enough to determine I was not a danger to myself or others.

45.    This should have been the end of it - Amerah Valentine should have been returned to me.

## IV. THE UNLAWFUL REMAND AND LATE PETITION FILING

46.    I went to court the next day, March 26, 2025.

47.    **ACS asked for AV to be remanded - meaning kept in foster care.**

48.    The judge ordered AV remanded without conducting a proper hearing or making proper findings.

49.    I was not given a meaningful opportunity to be heard.

50.    **Five days later, on April 1, 2025, ACS filed an Article 10 neglect petition.**

51.    **New York law requires the petition to be filed within THREE days of removal.**

52.    ACS violated this requirement by filing two days late.

53.    The judge should have dismissed the case for this violation but did not.

54.    I believe the late filing was because ACS had to manufacture allegations to put in the petition since there was no valid basis for removal.

## V. AV'S ABUSE AND NEGLECT IN FOSTER CARE-BABY SHOULD BE RETURNED AS LESS HARMFUL ENVIRONMENT

55.     Since being removed on March 25, 2025, AV has been moved SIX times in SIX months.

56.     Each move is traumatic for an infant and disrupts attachment and development.

57.     **When AV was less than one month old - still a newborn - she suffered sexual abuse while in ACS foster care.**

58.     I have observed marks on AV's body during visits that I believe are from this abuse.

59.     I reported this to ACS and requested investigation.

60.     ACS has not provided me with any information about whether they investigated or what happened.

61.     I have observed signs of physical neglect when I see AV: a. Poor hygiene b. Diaper rash c. Caked up dirt under her nails d. marks and injuries e. Spoiled milk and sour bottles

62.     **AV underwent surgery on her umbilical cord without my informed consent and without following up with keeping me informed about her medical care and issues.**

63.     What happened was this: a. ACS called me and said AV needed "emergency surgery" b. They pressured me to sign consent immediately c. They did NOT explain how the emergency came about, what were alternatives and options and needed information in order to make an informed decision about her medical care, as they were concealing information and repeatedly delayed getting me in touch with the provider recommending this surgery Moriah Freedman. They did NOT explain why surgery was necessary e. They did NOT tell me what other options existed f. They did NOT give me time to ask questions or get a second opinion

64.     **I only consented to a "pediatric surgical consultation" - not to actual surgery.**

65.     They performed the surgery anyway, I walked into what was to be a pediatric surgical evaluation to the procedure already being performed , without my signed consent and foreknowledge

66.      **After the surgery, the surgeon told me the surgery "was not necessary in that situation."**

67.     I believe the surgery was performed primarily for insurance billing purposes - meaning fraud.

68.     This has caused me tremendous guilt and distress.

## VI. AV'S SEVERE DEVELOPMENTAL DELAYS WITH NO EARLY INTERVENTION CARE

69.     At my most recent visit with AV (approximately [date]), I observed severe developmental delays.

70.     AV is now approximately six months old.

71.    During the visit, the foster parent or caseworker placed AV on her stomach for "tummy time."

72.    **AV could not lift her head up for more than two seconds.**

73.    **AV could not move her arms and legs appropriately or in a coordinated manner.**

74.    **AV could not roll over at all.**

75.    **AV showed no signs of attempting to crawl or even preparatory movements.**

76.    These are significant red flags for a six-month-old baby.

77.    A typically developing six-month-old should be able to: a. Hold head up steadily while on stomach b. Push up on arms c. Roll from back to stomach and stomach to back d. Begin rocking on hands and knees e. Show coordinated arm and leg movements

78.    AV is not doing any of these things.

79.    I immediately told the caseworker that AV needs to be evaluated.

80.    I specifically requested an Early Intervention evaluation.

81.    Early Intervention is a New York State program that evaluates and provides services to infants and toddlers with developmental delays.

82.    The caseworker said she would follow up within one week.

83.    That was [number] weeks ago and I have heard nothing.

84.    I have sent multiple emails asking for updates.

85.    **The caseworker and her supervisor (the vice president) have blocked my emails.**

86.    **They refuse to respond to my questions about my daughter's wellbeing.**

87.    I am terrified about what is happening to AV and what long-term harm is being done by the neglect she is experiencing in foster care.

## VII. OBSTRUCTION OF COURT ORDERED VISITATIONS

88.    ACS and NYF have systematically obstructed my visitation with AV.

89.    The court has ordered specific visitation, but ACS/NYF: a. Cancel visits without good reason b. Reschedule visits at the last minute c. Make false allegations during visits to justify reducing visitation d. Are hostile toward me during visits e. Interfere with bonding between me and AV

90.    **ACS has ordered me to have visits in another city - not in New York City where I live and where the case is pending.**

91.    This makes it extremely difficult for me to attend visits.

92.    I have asked ACS to move the visits to NYF headquarters, which is only eight minutes from the courthouse.

93.    ACS refuses.

94.    ACS will not work with my schedule or accommodate my needs.

95.    During visits, caseworkers make comments and behave in ways that "sabotage bonding" between me and AV.

96.    For example, they interrupt when I'm trying to interact with AV, they hover over me, they make disapproving comments about how I hold or feed her.

97.    I was breastfeeding AV before she was removed.

98.    NYF has failed to accommodate my nursing needs or help me maintain my milk supply so I could continue providing breast milk for AV.

99.    **The overall attitude from ACS and NYF is hostile and punitive, not supportive of reunification.**

## VIII. FALSE ALLEGATIONS AND IMPROPER RESTRAINING ORDER IN RETALIATION FOR REPORTING TO JUDGE IN ORDER TO SHOW CAUSE

100.    ACS has made false allegations to the court to justify continuing to keep AV.

101.    One allegation is that I "knew the address of the foster home."

102.    Based on this, they obtained some kind of restraining order or protective order saying I cannot have contact with the foster parents.

103.    **This is false. I do NOT know the address of the foster home.**

104.    **I have an audio recording of a phone call I made to the state registry for abuse.**

105.    In that call, the registry worker asked me if I knew the address of the foster home.

106.    **I clearly stated that I did NOT know the address.**

107.    I can provide this recording to the Court.

108.    ACS is lying to the court to create a false narrative that I am somehow dangerous or threatening.

109.    This is being used to justify restricting my contact with AV.

## IX. ICPC COORDINATION WITH FLORIDA WITHOUT COURT ORDER

110.    **ACS caseworker wrote a letter to my aunt Ella Baker in Florida stating that AV would be placed with her through ICPC (Interstate Compact on the Placement of Children).**

111.    ICPC is the process for placing a child in foster care across state lines.

112.    **No judge in New York has ever approved ICPC placement with my aunt.**

113.    **There has never been a hearing about this.**

114.    **I was never notified or given opportunity to object.**

115.    ACS is coordinating with the Florida defendants to give AV to my aunt - the same aunt who illegally took my other three children.

116.    This shows the conspiracy between ACS and the Florida defendants.

## X. MY AUNT HAS ADMITTED THE CHILDREN ARE TOO MUCH FOR HER

117.    **In recent court filings in Florida, my aunt Ella Baker has stated that my three children in Florida "may need to be given to her son" (my cousin) because "they are becoming too much for her."**

118.    This directly contradicts any claim that she is a suitable caregiver for additional children.

119.    If the children are "too much" for her, why is ACS planning to give her my newborn too?

120.    This makes no sense unless the goal is simply to keep the children away from me, not to place them in appropriate care.

## XI. DENIAL OF ACCESS TO COURT

121.    At my last evidentiary hearing (approximately [date - two days ago]), I experienced the most egregious violation of my rights yet.

122.    I had logged into the hearing virtually on my phone as I was walking to the courthouse.

123.    I wanted to be present in person as well since I am representing myself pro se.

124.    When I arrived at the courthouse and approached the courtroom, **two police officers were positioned directly in front of the courtroom doors.**

125.    **The officers physically prevented me from entering.**

126.    I told them it was my hearing and I needed to go in.

127.    **They pushed me back and would not let me enter.**

128.    My hearing was ongoing - I could hear it on my phone.

129.    I was being prevented from being physically present in my own proceeding.

130.    This is devastating because: a. I am pro se and need to be present to represent myself b. I cannot adequately present my case virtually alone c. I need to see the judge's reactions and hear everything clearly d. I have documents and evidence I wanted to present e. Being physically excluded sends a message to the judge that I am somehow dangerous or disruptive

131.    I broke down and cried outside the courtroom.

132.    **This was an extreme violation of my civil rights and my right to defend myself.**

133.    I do not know who ordered the police to block me from entering.

134.    I believe ACS coordinated this to prevent me from effectively participating in my hearing.

## XII. LACK OF PROPER PROCEDURES AND SERVICES

135.    I did not receive a service plan until September 2025 - **six months after AV was removed.**

136.    The law requires a service plan to be provided promptly so parents know what they need to do for reunification.

137.    Withholding the service plan for six months prevented me from working toward reunification.

138.    **No safety planning conference was conducted before or after removal.**

139.    **No preventative services were offered to help me keep AV.**

140.    **No investigation was conducted before AV was removed.**

141.    ACS just took her based on alleged "derivative neglect" from a dismissed foreign case.

142.    **My family was eligible for Family Team Conference (FTC).**

143.    FTC is a process where the family meets with ACS to develop a safety plan that allows the child to remain home.

144.   Because we were FTC-eligible, there was no need to remove AV.

145.   **The threshold for removal was very low and did not justify taking AV.**

146.   My home was assessed by ACS and **deemed "safe, well-maintained, and clean."**

147.   I have completed all the requirements in the service plan that was eventually given to me.

148.   Despite this, ACS continues to keep AV.

149.   I have provided ACS with names and information for family members who could be assessed as placement options for AV if she cannot be immediately returned to me.

150.   **ACS has not assessed these family members.**

151.   ACS is not making reasonable efforts (or under ICWA, "active efforts") to reunify me with AV.

## XIII. TAMPERING WITH REMOVAL REPORT

152.   **The report that ACS provides as to why AV was initially removed keeps changing.**

153.   Each time I see a new version of the report, there are additions and edits.

154.   **ACS should not be tampering with the original report of why they took AV.**

155.   The reason for removal should be documented at the time of removal and should not change.

156.   I believe ACS keeps editing the report to add new allegations to justify keeping AV because the original reason (derivative neglect from dismissed Canadian case) is insufficient.

## XIV. REQUEST FOR DIFFERENT JUDGE IGNORED

157.   I have filed requests with the New York Family Court asking for a different judge.

158.   I believe the current judge is biased against me, it appeared she had two officers preset by the doors of the court who physically prevented me from entering my own hearing while it was in progress and being heard and ruled upon, as I was on the virtual hearing on my cell phone. I. Eventually was allowed in but threatened that they were giving me orders not to enter-at my evidentiary hearing where I was to present evidence in my case. Something which none of my court appointed and indigent attorneys were ever doing. I then had to proceed in defending my case under duress and trauma at which the judge bialy ruled that ACS made reasonable accommodations.

159.   The judge has made rulings without proper hearings, ignored my otsc , allowed my 1028 hearing to go on for months and ACS to continue in filing after they didn't file their petition until 5 days after and refuse to Order ACS to stop making false allegations. She has allowed visits to stop and a restraining order to be in place based on unsubstantiated claims with proof that negated ACS claims.

160.   The judge allowed police to block me from entering the courtroom.

161.   The judge has not enforced visitation orders against ACS. The judge has told me if I want to speak I should raise my hand and threatens to have me removed from the

hearing for objecting during the case and allow officers to threaten me during the hearing.

162.   **My requests for a different judge have been completely ignored.**

163.   I have received no response at all.

## XV. ICWA VIOLATIONS

164.   **I am of Native American descent.**

165.   **My children, including AV, are Native American under the Indian Child Welfare Act (ICWA).**

166.   ICWA, 25 U.S.C. § 1901 et seq., provides special protections for Native American children in child welfare proceedings.

167.   **ACS has not complied with ICWA.**

168.   Specifically, ACS has not: a. Provided notice to my tribe b. Made "active efforts" to prevent removal (ICWA requires more than "reasonable efforts") c. Obtained testimony from a qualified expert witness d. Proven by evidence beyond a reasonable doubt that continued custody would result in serious harm e. Followed ICWA placement preferences

169.   The removal and continued detention of AV violates ICWA.

170.   ICWA requires that AV be returned to me or placed with Native American family members.

## XVI. THE FLORIDA SITUATION - MY AUNT'S ILLEGAL TAKING OF MY THREE CHILDREN

171.   The situation with AV in New York is directly connected to what happened with my three older children in Florida.   $SV$      $ZV$      $KV$

172.   My three children [Child 1 initials], [Child 2 initials], and [Child 3 initials] were taken by my maternal aunt, Ella Baker.

173.   At the time she took them, my aunt had only a temporary placement order from Quebec Youth Protection Services (QYPS) in Canada.

174.   **This Canadian order was never:** a. Certified by a Canadian court b. Authenticated for use in the United States c. Translated by a certified translator d. Domesticated under any treaty or compact e. Registered in any U.S. court f. Given any legal effect under U.S. law

175.   **My aunt had no U.S. court order giving her custody or guardianship of my children.**

176.   Despite this, my aunt: a. Took the children across state lines b. Enrolled them in Florida schools without my consent c. Refused to allow me any contact with them d. Refused to tell me where they were living

177.   Under U.S. law, my aunt's actions constitute parental kidnapping.

178.   When I learned where my aunt was living with my children, I traveled to Florida to get them back.

## XVII. THE FALSE BURGLARY CHARGES

179.    I filed an emergency pickup order on April 24th, 2025 which should have been promptly filed but was intentionally delayed until after 4:30pm causing judge to get to my filing the upcoming next week.

180.    The mother called the Non-emergency line and Deputy instructed her that an Emergency pickup order was not necessary to get her children and that no court order, unless it was issued by the United States, is valid and the mother should go to the address and call the police who would enforce her parental rights to care, custody and control of her children.

181.    On APRIL 25TH, I went to my aunt's residence in Seminole County, Florida. Deputy Jordan Gill unlawfully my ID without probable cause, detainment or arrest and refused to turn on her body camera after multiple requests by the mother

182.    Deputy Jordan Gill stated that her body camera was on, when I informed her it was not she insisted and grabbed her tased to intimidate me.

183.    I asked "why are you grabbing your taser?" Deputy answer, "I just feel more comfortable like this". When a neighbor was exiting his home and was walking towards up the Deputies' demeanor completely change and she pretended to be accommodating. I refused service from that Deputy and walked away. I called 911 again, and waited with fire fighters for witnesses hoping to receive an integral officer to assist me.

184.    My purpose was to lawfully retrieve my children and take them home with me.

185.    As their mother and legal custodian (since my aunt had no U.S. legal authority), I had every right to do this.

186.    When I arrived, I knocked on the door.

187.    **My three children were not present at the residence.**

188.    My aunt refused to open the door further than a crack with the chain lock on.

189.    My aunt called the Seminole County Sheriff's Office and falsely reported that I had committed or attempted to commit burglary.

190.    The same Deputy Jordan Gill responded with another male officer at which I was immediately arrested and questioned without Miranda rights read. I requested a sergeant who spoke with me and also refused to turn on his body camera.

191.    I explained to the deputies: a. I am the mother of the three children b. My aunt took them without legal US authority without my consent c. My aunt has no U.S. court order d. I was attempting to get my children back e. Under U.S. law, my aunt needs a U.S. court order to have legal custody

192.    I asked to speak to a supervisor.

193.    A sergeant came to the scene.

194.    The sergeant told me that my aunt was claiming to be the children's "legal guardian" and that "the children were hers" and I had "no parental rights."

195.    **This was completely false.**

196.    My aunt was never appointed legal guardian by any U.S. court.

197.    I have never had my parental rights terminated.

198.    Despite my explanations, the deputies arrested me for burglary.

199.    **The arrest was unlawful because:** a. A parent attempting to retrieve their own children from unlawful detention cannot commit burglary as a matter of law b. My aunt had no possessory interest in the property sufficient to support a burglary charge based on my actions c. I had no criminal intent - I was exercising my parental rights d. The children were not present or endangered

200.    **The police report does not list my children as victims.**

201.    **The police report does not list my children as witnesses.**

202.    **The police report does not indicate the children were present at all.**

203.    This proves the alleged "burglary" had nothing to do with any danger to the children.

204.    It was purely retaliatory for my attempting to exercise my parental rights.

## XVIII. THE BASELESS COMPETENCY EVALUATION IN FLORIDA

201.    After I was arrested, I was appointed a public defender in the criminal case.

202.    The public defender was Scott Sterling who refused to file a motion for dismiss and falsely informed me they could not until the state picked up the charges and pressured me to give irrevelevent information about the father of my newborn in New York.

203.    I attempted to communicate with my attorney about my defense who refused to talk with me and eventually asked to be relieved. I was assigned Nicole Jordan from Regional counsel office with rarely any communication and never was I in discussion about the facts of the case.

204.    On one occasion, I called the attorney's office to discuss my case.

205.    I was frustrated because I felt the attorney was unwilling to defend me or taking my case seriously.

206.    During this call, I apparently spoke in a manner that the attorney's staff considered "rude."

207.    I may have raised expressed frustration due to their refusal to connect me with my lawyer as I was held up at the airport and didn't want to be remanded for failing to appear at my hearing when I was on my way, but I did not behave in a way that suggested I was incompetent.

208.    **Without any notice to me, my attorney filed a motion requesting that I undergo a competency evaluation. This was only 2 days after I requested to be assigned new counsel due to ineffective counsel because she refused to file any motions to dismiss the case, remove the monitor and allow for third party contract so that I could see my children. The attorney would not listen and laughed at my requests.**

209.    **The sole basis stated in the motion was that I had been "rude" to office staff.**

210.    Being rude, frustrated, or upset is not evidence of incompetency.

211.   Many criminal defendants are frustrated with their attorneys.

212.   This does not mean they cannot understand the charges or assist in their defense.

213.   On August 20, 2025, the judge in the Florida criminal case ordered me to undergo a competency evaluation.

214.   **This order was entered without a hearing.**

215.   **I was not present in court.**

216.   **I was not given notice that this would be addressed.**

217.   **I had no opportunity to be heard.**

218.   **No evidence was presented to the court.**

219.   **No medical records were submitted.**

220.   **No expert testimony was provided.**

221.   **No one presented any factual basis for doubting my competency.**

222.   The order references that "during a hearing held two days prior—on August 18, 2025—the issue of [my] competency was raised."

223.   I do not recall being properly noticed that competency would be addressed at that hearing.

224.   Even if it was mentioned, there was no evidentiary presentation supporting a finding of incompetency.

225.   **The judge ordered the evaluation based solely on my attorney's bare assertion that I was "rude."**

226.   This violates my due process rights.

227.   The law requires evidence establishing a "bona fide doubt" of competency before ordering an evaluation.

228.   No such evidence was presented.

## XIX. THE FLORIDA FAMILY COURT IS USING CRIMINAL COMPETENCY FOR CUSTODY

229.   My aunt filed a petition for temporary custody in Seminole County Family Court.

230.   The family court judge is Christopher Spyrsenski,

231.   **This judge has explicitly stated that he will use the results of the criminal competency evaluation to determine whether I should have custody of my children.**

232.   **This is improper and violates my due process rights.**

233.   Competency to stand trial and parental fitness are two completely different legal standards: a. Competency to stand trial asks: Can the defendant understand the charges and assist counsel? b. Parental fitness asks: Can the parent provide adequate care for the children?

234.   A person can be incompetent to stand trial but still be a perfectly adequate parent.

235.   A person can be competent to stand trial but be an unfit parent.

236.   **These are separate inquiries that require different evidence.**

237.    Using criminal competency findings in family court violates the separation between criminal and family proceedings.

238.    It also denies me due process because I have not had an opportunity to present evidence about my parenting in a proper family court proceeding.

## XX. THE FLORIDA FAMILY COURT PROCEEDINGS VIOLATED DUE PROCESS

239.    My aunt's petition for temporary custody did not comply with basic legal requirements.

240.    Specifically, the petition did not: a. Serve both parents (the father was never served) b. List the father's address c. Include specific allegations of abuse, neglect, or abandonment d. List the addresses where the children have resided for the past five years e. Describe the current living arrangements f. Provide any factual basis for emergency custody

241.    Service on me was also defective. [I can provide specific details about how service was improper]

242.    At one point, a different family court judge granted me an emergency pickup order.

243.    This order directed law enforcement to retrieve my children and return them to my custody.

244.    I was supposed to pick up my children that Monday.

245.    However, on [date~~ - a Saturday], I was arrested for the alleged burglary.

246.    On April 25th, 2025 - the following Monday , the family court judge (the one who has my case now) **vacated the pickup order without a hearing.**

247.    **The judge's stated basis for vacating the order was my arrest - i.e., a police report.**

248.    A police report is hearsay.

249.    The judge held no evidentiary hearing.

250.    The judge did not allow me to present evidence or testimony.

251.    The judge did not make findings about whether I was actually guilty of anything.

252.    **At the same time the judge vacated my pickup order, he granted temporary custody to my aunt.**

253.    This was an abuse of discretion.

254.    Even if I had committed burglary (which I did not), that would be irrelevant to custody where: a. The children were not present b. The children were not endangered c. The alleged crime had nothing to do with my parenting d. The charge is merely an accusation, not proof f. The courts had proof that she was not the legal guardian and I still maintained my rights as on July 29th, 2025 my aunt filed for temporary custody.

255.    The judge should have held a full evidentiary hearing before making any custody determination if needed.

## XXI. MY AUNT IS BLOCKING PARENTAL CONTACT WHILE CLAIMING "ABANDONMENT"

256.  Since taking my children, my aunt has blocked all my attempts to have contact with them.

257.  I have tried to: a. Call the children b. Video call them c. Visit them d. Send them messages e. Send them gifts

258.  My aunt refuses all contact.

259.  She will not facilitate phone calls or visits.

260.  When I showed up at her house (the alleged "burglary"), she called the police rather than let me see my children.

261.  My aunt subsequently filed for and obtained a stay-away order.

262.  **This order requires me to stay away from my aunt AND my own three children.**

263.  **My aunt is using the legal system to block me from my children and then claiming I have "abandoned" them.**

264.  **You cannot claim a parent abandoned children while simultaneously blocking that parent's access to the children.**

265.  This is legally impossible and shows my aunt's bad faith.

266.  In the family court proceedings, my aunt requested supervised visitation based on allegations of "physical and emotional abuse."

267.  **My aunt did not specify any acts or omissions that would constitute such abuse.**

268.  **No evidence of abuse was presented.**

269.  The judge granted supervised visitation anyway, based on bare allegations.

270.  This violates due process.

## XXII. CANADIAN CASEWORKER IS COACHING MY AUNT

271.  My aunt, Ella Baker, has not graduated high school.

272.  She barely knows how to spell and has difficulty writing complete sentences.

273.  However, her court filings in Florida contain sophisticated legal language and arguments.

274.  In reviewing the filings, I can see a clear difference between: a. Parts that are obviously written by my aunt (poor spelling, simple sentences) b. Parts that are written in complex legal language

275.  **The sophisticated parts of my aunt's filings use language that is identical to what Deborah King writes in her Canadian court reports.**

276.  Deborah King is a caseworker with Quebec Youth Protection Services who was involved in the Canadian proceedings.

277.  **I believe Deborah King is coaching and assisting my aunt with her Florida court filings.**

278.  **A Canadian caseworker should not be interfering in U.S. custody proceedings.**

279.    I believe this is being done to ensure the children are not returned to me so that Canada is not implicated in wrongdoing.

280.    This shows the conspiracy extends across international borders.

## XXIII. THE IMPACT ON ME AND MY CHILDREN

281.    I have been completely separated from my three older children for almost two years.

282.    I have had minimal, obstructed contact with my newborn AV for six months. The agency and ACS is blocking my ability to nurse and bond with my infant and causing me to lose my milk which is best for newborns and has caused trauma and is breaking the family bond.

283.    The separation has been devastating for me and for my children who were cutting themselves and suicidal due to the trauma of foster care and the separation.

284.    Young children experience separation from their primary and sole caregiver as trauma.

285.    The longer the separation continues, the more damage is done to our bond and attachment.

286.    I am terrified about the harm being done to AV in foster care: a. She has been sexually abused b. She is showing severe developmental delays c. She is not receiving proper care d. She underwent unnecessary surgery e. She has been moved six times

287.    Every day that passes is another day of harm.

288.    I am also terrified about my three children in Florida: a. They are with someone who has admitted they are "too much" for her b. They may be moved to my cousin (my aunt's son) who I do not believe is appropriate c. They are being kept from me through false criminal charges d. They are being used as pawns in a multi-state conspiracy

289.    I have done nothing to deserve losing my children.

290.    I am a good mother who loves her children and wants them home.

291.    **I am not incompetent.**

292.    **I am not mentally ill.**

293.    **I am not a danger to my children.**

294.    **I have never abused or neglected my children.**

295.    What has happened to me and my children is a nightmare.

296.    The state systems that are supposed to protect children have instead harmed them.

297.    I need this Court's help because I have no other recourse.

298.    The state courts are all compromised and working together against me.

299.    The Seminole County judicial system is seeking to incarcerate me and  give my children as I believe the judge in the family case is being paid off to be bias and rule against me and prosecute me for a crime they know I can't commit to steal my own children

300.    This federal court is my only hope.

## XXIV. WHY IMMEDIATE RELIEF IS NECESSARY

300.   **Every day of delay causes irreparable harm:** a. To the parent-child bond b. To my children's development and wellbeing c. To my constitutional rights d. To my children's safety (especially AV)

301.   **AV is in immediate danger in foster care.**

302.   She has already been sexually abused and is showing severe developmental delays.

303.   Defendants are refusing to evaluate her or address her needs.

304.   **AV needs to be returned to me immediately or at minimum needs comprehensive evaluation by independent providers. She has had reoccurring emergency room visits due to fevers, viral illness has been ruled out and UTI and other infection is thought. With visible injuries to her labia witnessed by myself and a parent advocate, the agency refused to allow me to attend her ER visit and failed to give me the report from the ER based on that visit.**

305.   **The Florida criminal charges need to be dismissed as the officer should have returned my children after showing through proof of their birth certificates that I was their parent or at minimum the competency evaluation needs to be halted.**

306.   The competency evaluation is being used as a weapon across multiple jurisdictions to deprive me of my children.

307.   **My three older children need to be returned from my aunt who has no legal authority the decision to give her temporary custody on Tuesday October 28th, 2025 when the judge was fully aware that I was in the emergency room hours before the hearing at which the judge refused to allow the father of the children to be present, refused to have the hearing recorded and transcribed with an incomplete petition filed and grossly improperly served which involved unlawfully forcing me in the Seminole County courtroom, locking me inside at which the criminal court judge called me to the bench, said he was not recalling my case and served me the petition, after my case was called that morning and adjourned for next month. My court appointed attorney Jordan Dixon refused to talk to me and officers blocked me from approaching her.**

308.   Under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), when children are wrongfully taken and concealed, the home state retains jurisdiction.

309.   My children's home state needs to be determined and proper custody proceedings need to occur with both parents served and participating.

310.   **All of these issues need to be addressed immediately, not months from now after further damage has been done.**

## XXV. CONCLUSION

311.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

312.    I respectfully request this Court grant my emergency motion and order immediate return of all four of my children.

313.    In the alternative, I request the Court order comprehensive evaluation of AV and expedited proceedings to address the violations of my rights.
d on NOVEMBER 4TH at NEW YORK, NY.

**JATHIYAH VALENTINE**

## EXHIBITS TO BE ATTACHED:

•    Exhibit A: Audio recording of call to state abuse registry showing Plaintiff stated she did NOT know foster home address

•    Exhibit B: Hospital discharge papers from Harlem Hospital showing Plaintiff was not a danger to self or others

•    Exhibit C: Canadian QYPS order (showing it was never certified, authenticated, or domesticated)

•    Exhibit D: Florida criminal court order dated August 20, 2025 ordering competency evaluation

•    Exhibit E: ACS letter to Ella Baker regarding ICPC placement

•    Exhibit F: Florida court filing where Ella Baker states children are "too much for her"

•    Exhibit G: Timeline of AV's six placements in six months

•    Exhibit H: Documentation of Plaintiff's completed service plan requirements

•    Exhibit I: Documentation showing Plaintiff's home was assessed as "safe, well-maintained, and clean"

•    Exhibit J: Any photographs of marks or injuries observed on AV

•    Exhibit K: Correspondence showing ACS blocking Plaintiff's emails

•    Exhibit L: Court orders and documents related to the New York Family Court proceedings

•    Exhibit M: Any other relevant documentation.
[Attach all available exhibits]

_Email show Amendeth Valentine_
_Emergeny Status of Request_
_for adjournment in Florida_
_famny court case_

_Jathiyah Valentine_
_419 W 17th Street #21G_
_New York, NY_

_November 4th, 2025_



*#H Therapy enrollment*







Inbox — Yahoo!
10,000 messages, 7,543 unread





☑  ✏  🗀  🗑  🗓  ↩  ↩  ↪  🏳 ∨  🔕    ☐ Recovered Mes... ∨    Q Search

**Laskar-Elsayed, Yasmin N (ACS)**                                    Yesterday at 3:59 PM
RE: Valentine NN-02835-25, file# 328239 - SC at the ER                    Hide
To: laross,  jathiyahv,
Cc: Page, Jessica (ACS)

Good afternoon,

I was advised that Amerah was taken to the ER because she'd been having high fevers since Wednesday night.  The foster parent took Amerah to St. Barnabas ER on Wednesday night/Thurs morning and again to urgent care Friday and it was reported that both times the viral panels were negative, and the foster parent was told it was most likely teething. This morning, Amerah again had a fever of 103 which improved with medicine.  However, given the prolonged duration of these high fevers, it was recommended that the foster parent take Amerah back to the ER so she can be evaluated for a possible UTI or other infection.

Kind regards,

Yasmin N. Laskar-Elsayed, Esq. (she/her) I Agency Attorney Level 1
Division of Family Court Legal Services
NYC Administration for Children's Services
150 William Street, 5th Floor I New York, NY 10038
W: 212-442-6071 C: 347-957-0802
yasmin.laskar-elsayed@acs.nyc.gov

**NYC** Children

From: Laskar-Elsayed, Yasmin N (ACS)
Sent: Tuesday, October 21, 2025 3:20 PM
To: 'Kellsie Hazlewood' <KJH@hazelaw.com>; laross <laross@legal-aid.org>; jathiyahv <jathiyahv@yahoo.com>
Subject: RE: [EXTERNAL] Re: Valentine NN-02835-25, file# 328239

I'll send you everything through KiteWorks.

Well, we received the videos between 11:45PM and 3AM, and I've been on the record all day so I am not sure what, if any, objections I will have yet.

Kind regards







Jathiyah Valentine
Hearing Today
To: Amanda Joseph,  amanda.joesph@flcourts18.org,  Liz Fedak

October 28, 2025 at 12:20 PM

**Statement to the Court**

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA**

**FAMILY DIVISION**

**Division: 18**

**Ellen Baker,**
Petitioner/Respondent,

v.

**Jathiyah Valentine,**
Respondent/Petitioner.

**PETITIONER/RESPONDENT'S EMERGENCY MOTION FOR APPOINTMENT OF COUNSEL,
CONTINUANCE, VIRTUAL APPEARANCE, MEDIATION REFERRAL, APPOINTMENT OF
GUARDIAN AD LITEM, WAIVER OF FEES, IMMEDIATE RETURN OF CHILDREN, AND OTHER
RELIEF**

**COMES NOW,** Jathiyah Valentine, Petitioner/Respondent, pro se, and respectfully moves this Honorable
Court for the following emergency relief in this family law matter involving temporary custody of minor
children. This motion is made pursuant to Florida Statutes §§ 61.13 (parenting and time-sharing), § 61.401
(appointment of guardian ad litem), § 57.082 (waiver of fees for indigent parties), § 44.102 (mandatory
mediation in family law cases), Chapter 48 (service of process), § 1014.03 (parental rights), and Florida Rule of
Family Law Procedure 12.407 (testimony and attendance of minor children), among others, as well as the
movant's constitutional rights to due process, a fair trial, effective counsel, and lawful process under Article I,





Sent — Yahoo!
6,301 messages, 485 unread

Kat Kennedy                     10/31/25
Sleeping
Sleeping 2024 Bentley ave Orlando
II Sent from Yahoo Mail for iPhone

Kat Kennedy                     10/30/25
Sleeping
Sleeping 2024 Bentley ave Orlando
II Sent from Yahoo Mail for iPhone

Kat Kennedy                     10/29/25
Sleeping
Sleeping 3087 terminal dr Hebron,
ky Sent from Yahoo Mail for iPhone

Amanda, amanda.jo...  10/28/25
Hearing Today
Subpoenas to the Court IN THE
CIRCUIT COURT OF THE EIGHTEE...

Kat Kennedy                     10/28/25
Sleeping
I am traveling to Florida for court
hearing. II traveled overnight in the...

Jathiyah Valentine   10/26/25
Motion
EMERGENCY MOTION PACKAGE
FOR CUSTODY HEARING IMPORTA...

AOL MAIL!                       10/25/25
Email emails
Ellen Baker:
Hasanabaker12@gmail.com Hasan...

AOL MAIL!                       10/25/25
Supervised visit
Hi, Is it possible to get a refund in
the event that she doesn't show up...

AOL MAIL!                       10/25/25
Urgent Visit setup
Hi I just wanted to be sure that I

manuever around their various barriers for the purposes of her due process represent in this high-stakes custody dispute. This right aligns with the constitutional guarantee of effective assistance of counsel in matters affecting fundamental parental rights. See *In re: Amendments to Florida Family Law Rules of Procedure*, 810 So. 2d 1050 (Fla. 2002) (recognizing access to counsel in family proceedings).

## III. REQUEST FOR CONTINUANCE TO PREPARE WITNESSES AND EVIDENCE

6. The movant requests a continuance of the temporary custody hearing to allow sufficient time to secure witnesses, gather evidence, and prepare a defense. This is necessary to ensure a fair trial and due process, as the movant has been unable to do so due to improper service and medical exigencies. Florida courts must evaluate the best interests of the child under § 61.13(3), including the parents' capacity to facilitate a close parent-child relationship. A rushed hearing would prejudice this evaluation.

## IV. REQUEST FOR PERMISSION FOR FATHER TO APPEAR VIRTUALLY

7. The movant requests permission for the witnesses to appear virtually at future hearings, pursuant to Florida Supreme Court Administrative Order AOSC20-28 (authorizing remote proceedings) and local administrative orders in the Eighteenth Judicial Circuit permitting virtual appearances in family matters. This accommodates travel burdens and ensures participation without undue hardship.

## V. ASSERTION OF FUNDAMENTAL RIGHTS

8. The movant asserts the following unenumerated rights under the Florida Constitution (Article I, Section 9) and U.S. Constitution (Fourteenth Amendment): right to a fair trial, due process of law, and effective legal counsel. These are implicated by the improper service and ex parte proceedings.

9. The movant further asserts fundamental parental rights under § 1014.02, Florida Statutes (Parental Rights), including:

   ○ The right to direct the upbringing, moral or religious training, education, health care, an health of the minor child (§ 1014.02(1)-(2)).

   ○ The right to access and review all school and medical records (§§ 1014.02(3)(d)-(f); 10

   ○ The right to make health care decisions for the minor child, unless prohibited by law (§ 1014.02(3) (e)).





- Continue the hearing for 30-60 days to prepare with the immediate return of the children;

- Permit virtual appearance for the father/respondent;

- Vacate any ex parte orders due to improper service;

- Order immediate return of the children;

- Grant daily video visits and full access to education/medical records;

- Waive all fees upon indigency determination;

- Refer to mediation;

- Appoint a GAL for therapy and investigation;

- Allow third-party attendance;

- **VACATE the unlawful filing bar, accept the instant pro se motion, and impose no further restrictions on pro se access.**

- Grant such other relief as deemed just.

Respectfully submitted,


/s/ Jathiyah Valentine

Jathiyah Valentine

419 w 170th street
New York, NY 10011
(646)512-9272
Jathiyah Valentine
Pro Se Petitioner/Respondent

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the foregoing was furnished by email

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR SEMINOLE COUNTY, FLORIDA

CASE NO: _____ 2025-DR-001437

VALENTINE, JATHIYAH
STATE/PLAINTIFF/PETITIONER          **FILED**

DATE: _____ OCTOBER 28, 2025

VS.                                 **OCT 2 8 2025**

SCHEDULED TIME: _____ 1:30 PM

                          CLERK SEMINOLE COUNTY

**OPEN COURT MINUTES**

BAKER, ELLEN
DEFENDANT/RESPONDENT

FOR _____ FINAL HEARING

COURT OPENED AT: __1:23 PM__ IN COURTROOM __L__ CLERK _____ A VAIDEN

HONORABLE CHRISTOPHER SPRYSENSKI

BAILIFFS J PADIN

STATE/PLAINTIFF/PETITIONER/ATTORNEYS PRO SE

PUBLIC DEFENDER/DEFENSE/RESPONDENT/ATTORNEYS PRO SE

COURT REPORTER N/A

PETITIONER/PLAINTIFF _____ PRESENT ✓ NOT PRESENT _____ W/COUNSEL ✓ PRO SE

RESPONDENT/DEFENDANT ✓ PRESENT _____ NOT PRESENT _____ W/COUNSEL ✓ PRO SE

* Respondent duly sworn by the Court at 1:23pm.

* Court inquired with the Respondent at 1:23pm.

* Deputy Padin sounded the halls for the Petitioner at 1:39pm and reported no response.

* The Court granted the Respondent temporary custody and sole parental responsibility of the minor

children until further court order.

* The Court ordered that the Petitioner shall pay the Respondent child support in the amount of

$807.00 per month, beginning on December 1, 2025, and continuing on the first day of each month.

* The Court ordered that the Respondent shall be entitled to claim the minor children as dependents for

tax purposes each year.

* The Court ordered temporary supervised timesharing between the Petitioner and the minor children to

take place through the Toby Center. The Petitioner shall be responsible for initiating this process.

COURT RECESSED AT: 2:03 PM

**WITNESS** the Clerk and seal of said Court

this ___28th___ day of

_____ October _____, 2025 .

**GRANT MALOY**
**CLERK OF THE CIRCUIT COURT**
**AND COMPTROLLER**

BY: _____

**DEPUTY CLERK IN ATTENDANCE**

CERTIFIED COPY - GRANT MALOY
CLERK OF THE CIRCUIT COURT
AND COMPTROLLER
SEMINOLE COUNTY, FLORIDA

BY _____    DEPUTY CLERK
Date _____ Nov. 3, 2025

STYLE: _____ VALENTINE VS BAKER _____    PAGE: _____ TWO _____

CASE NO: _____ 2025-DR-001437 _____    DATE: _____ OCTOBER 28, 2025 _____

* The Court ordered that the Petitioner shall not have contact or visitation with the minor children

except through the Toby Center or as otherwise authorized by further order of the Court.

* The Court modified the Permanent Order of Injunction filed June 9, 2025 in 2025-DR-001459 to

permit the Respondent to initiate contact with the Petitioner in regard to the minor children.

* The Court ordered the Petitioner to undergo a psychological evaluation and shall follow all

recommendations of the mental health professional.

* The Court ordered that the Petitioner shall have no contact with the minor children's school teachers

and shall not be permitted on the school property.

* The Respondent provided her updated address to Court at 1:58pm.

* The Court ordered that the Respondent's address shall be made confidential.

* Court to prepare order.

GEN0205.003

Filing # 226683146 E-Filed 07/07/2025 12:17:13 PM



IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

JATHIYAH VALENTINE                     CASE NO.: 2025-DR-1437
     Petitioner,

v.

ELLEN BAKER
     Respondent.
_____/

## NOTICE OF FILING

This Court hereby gives notice of filing of the attached correspondence received on June 30, 2025. The Court is taking no action. This filing shall serve only to inform all parties of the document received.

CHRISTOPHER SPRYSENSKI
CIRCUIT JUDGE

Copies furnished to the following parties on July __, 2025:

JATHIYAH VALENTINE
JATHIYAHV@YAHOO.COM

ELLEN BAKER
HASANABAKER12@GMAIL.COM

Certified Copy – Grant Maloy
Clerk of the Circuit Court and Comptroller
Seminole County, Florida

Seminole County Clerk of the Circuit Court and Comptroller
eCertified at 07/11/2025 15:27:35 -04:00
eCertified Id: CCEA-B6GA-4E9K
Page 1 of 2



**COUR DU QUÉBEC**

L'honorable Line Bachand
Chambre de la jeunesse -
Montréal

Montréal 30 juin 2025

The Honorable Christopher M. Sprysenski
Circuit Court Judge, 18th Judicial Circuit
Family Administrative Judge
301 N. Park Ave., Sanford, FL 32771
407-665-4245

RE :   ZEPPORAH EWAOLUWA VALENTINE, DOB 9/17/2019
       SORIYAH MICHELLE VALENTINE, DOB 11/26/2017
       KASIM AKANDE VALENTINE, DOB 7/27/2021

Honorable Christopher Sprysenski,

Following an exchange with the Honorable Robert Hamel, assistant
coordinator for the Court of Québec, Youth Division, for the District
of Montréal, the present is to be filed in the cases of the children
mentioned above.

As pertinent information, the children are currently in the care of
Ellen Baker, a resident of Seminole County, Florida. On 28 March
2025, Judge Line Bachand, the undersigned, placed the children
into Ms. Baker's sole care, in the following Case Numbers from the
Court of Quebec, Youth Division, in and for the district of Montréal:
525-41-043300-243 (as to Z.V.), 525-41-043299-247 (S.V.), and
525-41-043301-241 (K.V.). Said judgements were signed 9 April
2025.

The orders rendered by Judge Line Bachand are in effect until June
28th, 2025.

Following this date, as the children and the mother are no longer on
the territory of Québec and no new applications have been filed
with this Court, the Court of Québec, Youth Division in and for the
District of Montréal has de facto lost jurisdiction.

**CONSIDERING** the above facts;

Palais de justice, 410, rue de Bellechasse Est, Montréal (Québec) H2S 1X3
Téléphone : 514-495-5807
Courriel : line.bachand@judex.qc.ca

2

**CONSIDERING** that, pursuant to section 73 of the Youth Protection Act, CQLR, c.P-34.1, the jurisdiction of the Court of Québec, Youth Division, is dependant on the residence, domicile or the territory served by the Director of Youth Protection who received the report concerning the child;

**CONSIDERING** that all parties are no longer within the territorial limits of this Court's jurisdiction;

**CONSIDERING** that the orders rendered by Judge Line Bachand will cease producing their effects on June 28th, 2025;

**THE COURT HEREBY** declines jurisdiction in favor of the 18th Judicial Circuit of Florida, in and for Seminole County, Florida.

SIGNED IN MONTRÉAL this 30th day of June 2025.

HONORABLE LINE BACHAND, J.C.Q.

**Investigation
Progress Notes**

*****WARNING*****
CONFIDENTIAL INFORMATION
AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **CASE NAME:** | Valentine,Jathiyah | **CASE ID:** | 28742344 |
| **STAGE NAME:** | Valentine,Jathiyah | **STAGE ID:** | 35631550 |

*necessary assessments are conducted regarding SC's safety and well-being. Follow-up attempts will be made to gain insight into
BM's household and determine whether appropriate measures are in place should SC be returned to her care.*

### Child Interview (Include Safe Sleep Discussion for Children Under One):

*Describe engagement and interview of all children and /or children residing inside the household and outside of the home.
Describe child's appearance. Assess for marks and bruises. Document medical provider and contact information. Document
any medical conditions. Describe whether child's basic needs are being met.*

#### Observation of Amerah Valentine

*CPS observed Amerah Valentine (SC) at the children Center during a supervise visit with the BM. The SC was light skin complexion,
straight hair. The SC was awake and alert when she was given to the BM, the SC was free of any marks or bruises when CPS
observed her.*

#### Collateral Contacts:
*Document interviews with all collateral contacts made and attempted. (Document full discussion and contact information in
separate note).
CPS spoke with the source of the report regarding the allegations and concerns for the family.*

**Clinical Consults and assessment support:** *Document requests for/ and assistance obtained from Clinical /Medical/ FCLS
/Investigative and Development Disability unit.*

*CPS will submit request for mental health, Early Childhood, and services pertaining to parenting support and family relationships.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*End of Note\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | | | | | |
|---|---|---|---|---|---|---|
| **Event Date:** | 3/27/2025 | **Event Time:** | 6:30 PM | | **Duration:** | |
| **Entry Date:** | 3/28/2025 | **Dist.Agy:** | A66 | | **Note Status:** | Draft |
| **Author:** | Hall, Leroy | | | | **Entered By:** | Hall,Leroy |
| **Method:** | Face To Face | | | | | |
| **Location:** | Other | | | | | |
| **Type(s):** | Casework Contact | | | | | |
| **Purpose(s):** | 24 Hour | | | | | |
| **Other Participant(s):** | | | | | | |
| **Family Participant(s):** | Valentine,Amerah A; Valentine,Jathiyah | | | | | |
| **Focus:** | Valentine,Amerah A; Valentine,Jathiyah | | | | | |
| **Motivational Interviewing (MI):** | | | | | | |

**Progress Notes Narrative:**

Casework contact
Jathiyah Valentine
646-512-9272
03/26/25

CPS made successful contact with Jathiyah Valentine (BM) and the baby Girl (SC) within 24hrs. **CPS gave the BM the at the door
notice to the BM**, the BM took the paper and asked what it is. CPS Explained it's a roll out for ACS to foster more transparency in the
community with families. CPS observed the (SC) to be free of marks of marks and bruises.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*End of Note\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | | | | | |
|---|---|---|---|---|---|---|
| **Event Date:** | 3/27/2025 | **Event Time:** | | | **Duration:** | |
| **Entry Date:** | 3/28/2025 | **Dist.Agy:** | A66 | | **Note Status:** | Draft |
| **Author:** | Parris, Jessica | | | | **Entered By:** | Parris,Jessica |

Filing # 229821306 E-Filed 08/20/2025 10:16:03 AM

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

STATE OF FLORIDA,                                          CASE NO.: 2025-CF-1005-A
        Plaintiff,

vs.

JATHIYAH SABURAH VALENTINE ,
        Defendant.
_____/

## MOTION FOR COMPETENCY EVALUATION

**COMES NOW,** the Defendant, by and through undersigned counsel and pursuant to Fla. R. Crim. P. 3.210(b) and moves this Honorable Court to enter an order directing that the Defendant be evaluated for the purpose of determining competency and as grounds therefore states as follows:

1.  The Defendant is charged with the offense of Burglary of a Dwelling.
2.  The undersigned counsel requests this court appoint Psychological Affiliates to evaluate the Defendant to determine competency to stand trial.
3.  This motion is made in good faith and the undersigned has reasonable grounds to believe that the Defendant is incompetent to proceed.

**WHEREFORE,** the Defendant prays this Honorable Court enter an Order appointing Psychological Affiliates to evaluate the Defendant to determine competency to stand trial, and grant such other relief as this court deems just, proper, and appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this document has been furnished by eportal delivery to the Office of the State Attorney on August 20, 2025.

/s/ Nicole Jordan
**NICOLE JORDAN, Esq.**
FL. Bar No. 0624403
Assistant Regional Counsel
Office of Criminal Conflict &
Civil Regional Counsel, 5th District
101 Sunnytown Road, Ste. 310
Casselberry, FL 32707
Phone: (407) 389-5140
Primary Email: njordan@rc5state.com
Secondary Email:krousseau@rc5state.com

CERTIFIED COPY - GRANT MALOY
CLERK OF THE CIRCUIT COURT
AND COMPTROLLER
SEMINOLE COUNTY, FLORIDA

BY_____  DEPUTY CLERK
Date_____

Filing # 229895994 E-Filed 08/20/2025 11:33:01 PM

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

STATE OF FLORIDA,                                    CASE NO.: 2025-CF-1005-A
    Plaintiff,

vs.

JATHIYAH SABURAH VALENTINE ,
    Defendant.

_____/

## ORDER APPOINTING EXPERT FOR COMPETENCY EVALUATION

THIS CAUSE came upon the Court during a hearing on <u>August 18. 2025</u>
during which the issue of the Defendant's competency was raised. It is thereupon
**ORDERED AND ADJUDGED** as follows:

1.    The following individual is hereby appointed as expert to examine
the Defendant in accordance with the requirements of this Order:

XXXX **Psychological Affiliates, Inc.;** 2737 West Fairbanks Avenue; Winter Park, FL
    32789 Phone: 407-740-6838
    Email: jen@psychologicalaffiliates.com
_____ **Dr. Darlene B. Antonio, Ph.D.;** 2700 Westhall Lane, Suite 110; Maitland,
    FL 32751 Phone: 407-475-1025
    Fax: 407-475-1027
    Email: drantonio@cfl.rr.com
_____ **Dr. Kathleen M. Oses, PSY.D.;** 5415 Lake Howell Rd, #203; Winter Park,
    FL 32792 Phone: 407-865-4130
    Email: oseskathy@gmail.com
_____ **Dr. Michael Collins, PSY.D.;** 501 E. Las Olas Blvd, #300; Ft. Lauderdale,
    FL 33301 Phone: 754-202-4443
    Fax: 877-711-2128
    Email: mjcollinsphd@thecncenter.com
_____ **Dr. Wende J. Anderson, PSY.D.\*\*;** 200 North Palm Ave, #33850;
    Indialantic, FL 32903
    Phone: 321-541-1250
    Email: drwendeanderson@gmail.com
      \*\*Evaluations are conducted via Teams. Must contact provider to confirm
      availability prior to appointment.

2.    The expert appointed in paragraph one shall examine the Defendant to report whether the
Defendant is competent to proceed, pursuant to the criteria set forth in section 916.12 of

Florida Statutes and Rule 3.211 of Florida Rules of Criminal Procedure. Specifically, whether the Defendant has sufficient present ability to consult with his/her lawyer with a reasonable degree of rational understanding and whether he/she has a rational, as well as factual, understanding of the proceedings against him/her. In considering the issue of the Defendant's competence to proceed, said expert shall consider and include in the report the following factors and any other deemed relevant by the expert:

The Defendant's capacity to:

      (a) Appreciate the charges or allegations against him/her;
      (b) Appreciate the range and nature of possible penalties, if applicable,
          which may be imposed in the proceedings against him/her;
      (c) Understand the adversarial nature of the legal process;
      (d) Disclose to his/her attorney facts pertinent to the proceedings at issue;
      (e) Manifest appropriate courtroom behavior; and
      (f) Testify relevantly.

3.     If the expert should find that the Defendant is incompetent to proceed, then the expert shall report on any recommended treatment for the Defendant to attain competence to proceed, including the least restrictive setting in which to receive the treatment. In considering the issues relative to treatment, the examining expert shall report on the following factors:

      (a) The mental illness or other mental factor causing the incompetence;
      (b) The treatment or treatments appropriate for the mental illness or other
          mental factor of the Defendant and an explanation of each of the possible
          treatment alternatives, in order of choices;
      (c) The availability of acceptable treatment. If treatment is available in the
          community, the expert shall so state in the report; and
      (d) The likelihood of the Defendant attaining competence under the treatment
          recommended, an assessment of the probable duration of the treatment
          required to restore competence, and the probability that the Defendant
          will attain competence to proceed in the foreseeable future.

4.     Any written report submitted by an expert shall contain the following information:

      (a) Identification of the specific matters referred for evaluation;
      (b) A description of the evaluation procedure, techniques, and tests used in
          the examination, and the purpose or purposes for each;
      (c) The expert's clinical observations, findings, and opinions on each issue
          referred to the expert for evaluation by the Court, and specifically
          those issues, if any, on which the expert could not give an opinion; and
      (d) Identification of the sources of information used by the expert and the
          factual basis for the expert's clinical findings and opinions.

5.     The Defendant currently resides at: 4196 W. 17th Street. #21G, New York, New York 10011.

If the Defendant is incarcerated at the time of the scheduled evaluation, then the expert shall arrange to conduct the evaluation at the John E. Polk Correctional Facility/Detention

Center. If the Defendant is not incarcerated, the Defendant shall contact the expert to schedule a time for the evaluation.

6.     The expert appointed in paragraph one shall submit his/her written report directly to the Court with copies to the attorneys for the State and the Defense, on or before the 1st day of October 2025.

7.     All costs and fees incurred in the competency evaluations specified in this Order shall be billed as follows:

       __XXX__ (A)  The initial competency evaluation for defendants shall be paid by Court Administration if the Court determines and appoints one of the experts listed in paragraph one herein.

       _____ (B)  If court-appointed conflict counsel requests a specific expert to complete the evaluation and that expert is not one of the appointed experts listed in paragraph one herein, or moves for a confidential expert, the Justice Administrative Commission ("JAC") shall be responsible for payment. In such cases, the bill shall be submitted to conflict counsel by the appointed expert for submission to the JAC.

       _____ (C)  If defense counsel specifies issues of both competency and sanity, Court Administration shall pay for the competency evaluation but shall not pay for the sanity evaluation. In such cases, the expert shall submit two (2) separate reports, one addressing the competency issues and another addressing the defense of insanity at the time of commission of the crime(s) charged with a separate billing for each report.

8.  Procedure upon receipt of evaluation reports:

       __XXX__ (A)  If defense counsel requests the evaluation, only one report shall be ordered, for instance, one expert appointed to do the evaluation. If the report's contents and conclusion is incompetency and is stipulated to by the State Attorney, no additional evaluation shall be ordered and the Court may make its findings and rule on the basis of one evaluation.

       _____ (B)  If the prosecution or defense disagrees with the Court's expert, then they may hire their own expert for an additional competency evaluation. The Court will not pay for these additional experts. Likewise, if the prosecution or defense wishes to have the Court's expert testify as to the findings in a particular case, then the expert's fee for testimony shall be paid by the party requesting the expert's presence.

       _____ (C)  If the Court requires testimony from its own expert, the Court will pay per the expert's contracted fee with Court Administration.

9.     Payment of due process costs is controlled by the Eighteenth Judicial Circuit Administrative Order Number 17-19 Amended. The billing for competency evaluations shall be sent:

(a) If to be paid by Court Administration to:

> Brandy Jenkins
> > Seminole County Criminal Justice Center
> > 101 Eslinger Way
> Sanford, FL 32773
> > Seminoleinvoices@flcourts18.org

(b) If defense counsel, to:
   _____, Esquire
   Address: _____

   Phone # _____

(c) If prosecution counsel, to:
   _____, Esquire
   Address: _____

   Phone # _____

(d) If sanity evaluation, to counsel:
   _____, Esquire
   Address: _____

   Phone # _____

10. This cause is scheduled for a hearing on the issue of the Defendant's competence to proceed by the parties on a date and time that is coordinated by both parties.

**DONE AND ORDERED** in chambers, Sanford, Seminole County, Florida this Wednesday, August 20, 2025



59-2025-CF-001005-A 08/20/2025 04:42:43 PM

Michael Rudisill, Circuit Judge
59-2025-CF-001005-A 08/20/2025 04:42:43 PM

NICOLE JORDAN
RCCSEMINOLE@RC5STATE.COM

WAGNER, DONAVAN
DWAGNER@SA18.ORG

Nicole Jordan-Dixon
RCCSeminole@rc5state.com
krousseau@rc5state.com

Robert Blaise Trettis

SEMINOLEFELONY@PD18.NET

SEMINOLE FELONY SAO E-SERVICE ACCOUNT
SEMFELONY@SA18.ORG

State Attorney 18th Circuit
stac@sa18.org
eservice@sa18.org



Kirsten Tague, Judicial Assistant
59-2025-CF-001005-A 08/20/2025 11:31:52 PM

# THE NEW YORK FOUNDLING

**North Manhattan Community Services**
**501 Southern Boulevard**
**Bronx, NY 10455**

25DT1437
Ellen Baker

July 16, 2025

Case name: Jathiyah Valentine

Child name: Amerah Valentine
DOB: 3/14/2025

To: Whom it may concern,

Please note that the child mentioned above is in Foster Care placement with the : New York Foundling family foster care and has been remanded to the Commissioner of Administration of Children's Services of New York.

This letter confirms that the child Amerah is currently placed in a non kinship foster home, the New York Foundling foster care is currently in the process of filing an ICPC for child Amerah Valentine to Ms. Hasana Baker. Ellen Baker

For any questions or concerns please feel free to contact Karina Santos at the contact information below

Thank You.

Karina Santos

The New York Foundling

Case Planner, Family Foster Care

501 Southern Blvd| Bronx, NY

Cell: 929-464-0923

Karina.Santos@nyfoundling.org

www.nyfoundling.org |@TheNYFoundling

CERTIFIED COPY - GRANT MALOY
CLERK OF THE CIRCUIT COURT
AND COMPTROLLER
SEMINOLE COUNTY, FLORIDA
BY _____ DEPUTY CLERK
Date_____ 8/13/25

**Empowering Children**
**And Families since 1869**

Filing # 234429842 E-Filed 10/24/2025 03:34:16 PM

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

STATE OF FLORIDA,
    PLAINTIFF,

CASE NO.: 2025CF001005A
JUDGE MICHAEL J RUDISILL

vs.

JATHIYAH SABURAH VALENTINE,
    DEFENDANT

## NOTICE OF APPEARANCE, WRITTEN PLEA OF NOT GUILTY, WAIVER OF ARRAIGNMENT AND DEMAND FOR DISCOVERY

**COMES NOW, John Mannion, Esquire,** of Mannion Law LLC, and hereby enters this Notice of Appearance and Waiver of Arraignment for the above-named Defendant, enters a written plea of Not Guilty and respectfully requests a Jury Trial on the matter.

DEFENDANT FURTHER makes written demand under Rule 3.220, Fla. R. Crim. Proc., that the State Attorney of the above Judicial Circuit, or his designated Assistant, furnish and produce for inspection, copying, testing and photographing, all information and evidence and items provided in said Discovery Rule, moves that the aforementioned State Attorney furnish within fifteen days, a Statement of Particulars under Rule 3.140(n), Fla. R. Crim. Proc. of the time, date and place of the commission of the offense alleged in the Information and/or Police Reports herein, and whether or not the State intends to prosecute the accused as a principal or accessory.

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed electronically and has been furnished by E-Service to the Office of the State Attorney.

Respectfully submitted this 24th day of October, 2025,

        **BY:** */s/ John J Mannion Jr*
        John J Mannion Jr
        Fla. Bar 676020
        Mannion Law LLC
        520 W. Lake Mary Blvd. Ste. 103
        Sanford, Florida 32773
        (407) 732-6040
        jmannion@mannionlaw.net
        Court Appointed Counsel

Page 1 of 1

ORIGINAL

EVIDENCE 1/1

**ARREST REPORT**

**Seminole County Sheriff's Office** 2025CF001005A

Region: **ER**

Marsy's Law CVI

For the Public: **Yes**

CSA: **38**   GRID

Juvenile: **Yes**

Agency ORI#: **FL0590000**

Agency Report #: **202500002466**

Weapon Seized: **No**    Weapon Type: **NA**

Arrest Location: **2300 VIA LOMA DR, OVIEDO, FL 32765**

Offense Location: **5152 LOMA VISTA CIR #304, OVIEDO, FL 32765**

Arrest Date/Time: **4/26/2025 22:45**    Booked Date/Time:    Jail Date/Time: **4/26/2025 23:21**    Fingerprinted: **Y**

Local#:    FDLE#:    DOC#:

**DEFENDANT**

Name: **VALENTINE, JATHIYAH SABURAH**    Race: **B**    Sex: **F**    DOB: **5/11/1983**    Or Age:

Height: **507** Weight: **175** Eyes: **BRO** Hair: **BLK**    Alcohol Related: **N**    Drug Related: **N**    Court Translator: **N**    Language:

Local Address: **1603 NW 7th Ave, Miami, FL 33136**    Phone:    Residence: **N/A**

Next of Kin: **NONE GIVEN**    Relationship:    NOK Phone:    Religion: **UNKNOWN**

Business Name: **UNEMPLOYED**    Business Address:

Job:    Business Phone:

DL#: **V453437836710**    DL State: **FL**    SSN: **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**    Marital: **S**    Place of Birth: **NJ**    FILED 6/10/25

GPS monitored: **N**    Citizenship: **United States of America**    If not a U.S. citizen, contact embassy consulate

APR 27 AM 10:30

Alias Name(s):    Person Identifier(s):    APR 2 7 2025
**BUILD MEDIUM BUILD MEDIUM**

Co-Defendant(s):    CLERK SEMINOLE COUNTY

Name    Race    Sex    DOB    or Age

**CHARGE(S)**

| Counts | Charge Description | Statute# | Ordinance | Attempt/Commit | Reason# | Type |
|---|---|---|---|---|---|---|
| 1 | BURGLARY OF OCCUPIED DWELLING UNARMED - NO BOND | 810.02 3a | No | Commit | | Probable Cause |
| | Drug Activity: N/A | | | | Drug Qty: | 0.00 |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named defendant committed the following violation of law:

On the 26 of April 2025 at 10:45 PM (Specifically include facts constituting cause for arrest.)    |    BOND: NO BOND

P.C. Exists for Charge(s):    Judges's Signature:    Date:

On April 26, 2025, I responded to 5152 Loma Vista Circle, Oviedo in unincorporated Seminole County in reference to a child custody dispute. Prior to my arrival, dispatch advised the address I was responding to had history. In researching the previous call, it stated the caller (Jathiyah Valentine) had called in for a well-being check of children at the apartment due to the caretaker not returning her messages. The notes from the responding deputy indicated that Valentine did not have custody of her children due to her mental state from a Canadian court order.

Upon my arrival, I made contact with a female who stated she called in. She was sitting across the street at the neighboring apartments on the steps waiting for law enforcement. I asked for the female's identification to verify who I was talking to, in which the female became defensive and did not provide her ID to me. The female then stated she no longer wanted the police and walked away. I was unable to call the children's guardian, Ellen Baker, to tell her Valentine is in the area trying to see her children due to another call.

Less than an hour later, another deputy responded to a call at the residence regarding Valentine trying to get into the residence to get to the children. Baker stated she opened the door with the chain in place, to which Valentine tried to access the residence by pushing the door open more. The chain stopped the door and Baker tried closing the door and kept saying for Valentine to stop, but Valentine was keeping the door open (as far as it could go with the chain) and trying to get inside. Baker advised she was unsure how Valentine got the address due to the address being confidential and Baker not wanting Valentine to harass the children. Baker stated to the deputy she was in fear for the children and kept trying to close the door but was unable due to Valentine pushing to get in.

Deputies made contact with Valentine at the fire station across the street, to which she was placed in handcuffs that were double locked and checked for proper fitting. Valentine was then questioned about the incident, to which she told deputies she wanted to take her children to an AirBNB which she rented nearby. Valentine stated she had a parental right to her children and would not listen to deputies when we tried to explain there was a court order in place and she in fact did not have custodial rights over her children. Baker provided deputies with the court order, which will be added to the case.

Baker completed a sworn statement stating her intent to prosecute and received a Victim's Rights brochure.



**ARREST REPORT**

## Seminole County Sheriff's Office

**Marsy's Law CVI** ☐

For the Public: **Yes**

Region: **ER**

Juvenile: **Yes**

CSA: **38**    GRID

Agency ORI#: **FL0590000**    OBTS#:    Agency Report #: **202500002466**

After completing the investigation, I found probable cause that Jathiyah Valentine violated FSS 810.02(3a) – BURGLARY OF OCCUPIED DWELLING UNARMED when she kept pushing the door open after the homeowner advised for her to stop with the intent to take her children to an AirBNB that she was renting while she does not have legal custody of them and in violation of the Canadian court order.

I respectfully ask that Valentine be place on EMPACT monitor due to her not living in the state, as well as a no-contact order since Baker stated she was in fear and asked to be notified when Valentine was released. Baker advised she is looking to file an injunction against Valentine.

Statements made by defendant prior to, during, and after arrest as related to each charge:

**See Narrative**

**ADMINISTRATIVE SECTION**

| Miranda Warning ☐ | HOLD FOR OTHER AGENCY Name: | Verified By: | | Date | Bond: Charge # | Bond: Charge # |
|---|---|---|---|---|---|---|
| ☐ ADULTS ONLY!! Hold for First Appearance DO NOT BOND | Reason: | Sworn to and subscribed before me, the undersigned authority, this 27 day of April | | Bond Type: 1. R.O.R, 2. Cash | 3.Surety 5. Cert. 4. Ball/ 6. Other Bond | Type:        Type: |
| I swear/affirm the above and reversed and attached statements are true and correct. Officer's/Complainant's Signature | | In the year 2025 | | Returnable Court Date: | | Returnable Court Date: |
| | | Name/Title of Person Authorized to Administer Oath. | | Release Date: | | Release Time: |
| GILL, JORDAN P 121095 Name(Printed) and Employee#, ___ 121095 | | Jordan Bar | | Releasing Officer: | | |

# Certificate of Completion

This certifies that the person named below has completed a
4 Hour Parent Education And Family Stabilization Course

## COURSE FOR PARENTS

PARENT EDUCATION & FAMILY STABILIZATION COURSE

Jathiyah Valentine

419 W 17th Street Apt. 21g, New York, NY 10011

Date of Birth: 05/11/1983

Date of Course Completion: 09/23/2025

Certificate Number: 1569757



Mrs. Shera S. Pontree, Course Instructor
(888) 338-8855 | certificate@courseforparents.com

Verify the authenticity of this certificate by
visiting: NALearning.org/Verify

# Certificate of Completion

This certifies that the person named below has completed a

**4 Hour Anger Management Class**

## COURSE FOR ANGER

### ANGER MANAGEMENT CLASS

Jathiyah Valentine

419 W 17th Street Apt. 21g, New York, NY 10011

Date of Birth: 05/11/1983

Date of Course Completion: 05/04/2025

Certificate Number: 1450448





Mr. Robert A. Williams, Course Instructor
Certified Anger Management Specialist (CAMS-1)
Certified Domestic Violence Specialist (CDVS-1)
(888) 338-8855 | certificate@courseforanger.com

Verify the authenticity of this certificate by
visiting: NALearning.org/Verify

# Certificate of Completion

## Awarded To

### Jathiyah Valentine

For

## Anger Management

on this day

### September 19, 2025



The Fortune Society
Building People. Not Prisons

Rodney Peay

Program Director

IN THE Dostic COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA

Jathiyah Valentino
Petitioner/Plaintiff

Case Number 2025Dr oo1437
Division: _____

FILED IN OFFICE
GRANT MALOY
CLERK CIRCUIT COURT
SEMINOLE CO. FL
2025 JUL 21 PM 2:20

v.
Ellen Baker
Respondent/Defendant

MOTION FOR/TO Not send the Kid to NY to be split up

Respondent/~~Petitioner/Plaintiff~~ The ~~Petitioner/Plaintiff~~ Ellen Baker moves the Court for the entry of an order _____ and for grounds says:

I Ellen is Asking Please do not take the Kids to sprt them up in New York they have been threw enought allready I also would like up you can set up some type of supervise vist an call For the Kid I would like to now to see the Paperwork from NY were her 3 mo. baby is that they are giverg me Dont Want to Keep

Wherefore, the Movant respectfully requests the Court enter an order granting this motion.

Date: 7-26-25 eg

Respondent Ellen Sag
~~Petitioner/Plaintiff~~

5152 Loma Vista Cir
Address

Oviedo Fl9
City, State, Zip Code

689 203-2308
Phone

Hasenabaker 12 @ gmail.com
E-mail address

CERTIFIED COPY · GRANT MALOY
CLERK OF THE CIRCUIT COURT
AND COMPTROLLER
SEMINOLE COUNTY, FLORIDA

BY _____ DEPUTY CLERK
Date _____

1

GEN0523.139

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Motion: was ☐ mailed ☐ e-mailed ☐ hand-delivered on
_____ (date) to:

Name: _____

Address: _____

_____

Petitioner/Plaintiff
Respondent's

GEN0523.139

2

8/13/25

IN THE __Domestic__ **COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,**
**IN AND FOR SEMINOLE COUNTY, FLORIDA**

Case No.: __2025Dr001437__

__Jathyah Valentine__
Plaintiff(s)/Petitioner(s),

Vs.

__Ellen Baker__
Defendant(s)/Respondent(s).

__to Not send the kids to New York__
(Title of Document)

FILED IN OFFICE
GRANT MALOY
CLERK CIRCUIT COURT
2025 JUL 21 PM 2:20
SEMINOLE CO, FL

HKing the kids there this an take the
baby if they are going to take them
I also have to Sing a lease FNding the
Kid we are now in a one bed room
I want my nince to have her kid they
need her but She needs help Please
help?

Karina Santos                    thank you
                                  Ellen Bake
929-464-0923
lady DCF
For baby
                    by 9/30/25
                    To be PHce in
                    abigger Apt

GEN0721.124

SEMINOLE COUNTY FLORIDA
BY
Date 8/13/25    DEPUTY CLERK

IN THE ___18TH___ COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR SEMINOLE COUNTY, FLORIDA

Case No.: 25Dr1437

Jathivah Valentine.
Plaintiff(s)/Petitioner(s),

Vs.

Ellen Baker
Defendant(s)/Respondent(s).

Notice of Filing
(Title of Document)

this is the paperwork from NY about Amerah Valentine 3 mo old. Mrs Karina Santos sent me I Just want the Judg- to no that the kid have been threw a lot Please don't take them away to put them with Stranger I do want my niece to have her kids She love them but She need help For herself to be able to help them be great adult Stable Home. thank you

Ellen Baker
eh
7-23-25

CERTIFIED COPY - GRANT MALOY
CLERK OF THE CIRCUIT COURT
AND COMPTROLLER
SEMINOLE COUNTY, FLORIDA
BY
Date
DEPUTY CLERK

GEN0721.124

2. Has Respondent ever received or tried to get an injunction for protection against domestic violence against Petitioner in this or any other court?

_____ Yes __X__ No        If yes, what happened in that case? *{Include case number, if known}*

_____

_____

3. Describe any other court case that is either going on now or that happened in the past, including a dissolution of marriage, paternity action, or child support enforcement action, between Petitioner and Respondent *(include city, state, and case number, if known)*: Her 3 kid was in ~~Cathla~~ Canade under DcF for 2 years they took them Cause she's unstable I have all the court papers. She need help

4. Petitioner is either a victim of domestic violence or has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence because respondent has: *(Mark all sections that apply and describe in the spaces below the incidents of violence or threats of violence, specifying when and where they occurred, including, but not limited to, locations such as a home, school, place of employment, or time-sharing exchange)*

a. _____ committed or threatened to commit domestic violence defined in s. 741.28, Florida Statutes, as any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another. With the exception of persons who are parents of a child in common, the family or household members must be currently residing or have in the past resided together in the same single dwelling unit.

b. _X_ previously threatened, harassed, stalked, or physically abused the petitioner.

c. _____ attempted to harm the petitioner or family members or individuals closely associated with the petitioner.

d. _X_ threatened to conceal, kidnap, or harm the petitioner's child or children.

e. _____ intentionally injured or killed a family pet.

f. _____ used, or has threatened to use, against the petitioner any weapons such as guns or knives.

g. _X_ physically restrained the petitioner from leaving the home or calling law enforcement.

h. _____ a criminal history involving violence or the threat of violence (if known).

i. _____ another order of protection issued against him or her previously or from another jurisdiction (if known).

j. _____ destroyed personal property, including, but not limited to, telephones or other communication equipment, clothing, or other items belonging to the petitioner.

k. _____ engaged in a pattern of abusive, threatening, intimidating, or controlling behavior composed of a series of acts over a period of time, however short.

l. _X_ engaged in any other behavior or conduct that leads the petitioner to have reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence.

Florida Supreme Court Approved Family Law Form 12.980(a), Petition for Injunction for Protection Against Domestic Violence (06/24)

3

IN THE ___18TH___ COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR SEMINOLE COUNTY, FLORIDA

Case No.: 25Dr1437

Jathiyah Valentine.

Plaintiff(s)/Petitioner(s),

Vs.

Ellen Baker

Defendant(s)/Respondent(s).

Notice of Filing
(Title of Document)

this is the Paperwork From NY about Amerah Valentine
3 mo old . Mrs Karina Santos sent me . I just want
the Judg- to no that the Kid have been threw a lot
Please dont take them away to Put them with
Strangers I do want my niece to have her Kids
She love them but She need help For herself
to be able to help them be great adult
Stable Home. . thank you

Ellen Baker
el
7-23-25

GEN0721.124

CERTIFIED COPY - GRANT MALOY
CLERK OF THE CIRCUIT COURT
AND COMPTROLLER
SEMINOLE COUNTY, FLORIDA
BY _____ DEPUTY CLERK
Date



GSI Avenue of the Americas
New York, New York 10011
www.nyfoundling.org.

September 23, 2025

Re: **Service Plan & Referred Services**
Case name: **Jathiyah Valentine**

The Service Plan for Ms. Valentine as outlined by the NY Foundling and ACS as part of the goal of Return to Parent is as follows:

- A Mental Health Evaluation completed by a provider who is provided a copy of the neglect petition.
- Compliance with any recommendations made as a result of the evaluation, including but not limited to medication management
- Parenting Skills classes
- Anger Management sessions

Additionally, Ms. Valentine is to provide the agency with a signed HIPAA for each of the aforementioned services so that the agency can monitor and verify the services as they take place.

Ms. Valentine was provided with this plan in court reports dated June 12, 2025; and July 14, 2025; and August 5, 2025. It was also emailed to her on September 23, 2025.

Previous referrals:

- Ms. Valentine was referred on 6/13/25 for Mental Health Evaluation at Karen Honey Clinic.
- Parenting Skills and Anger Management referral was made on 6/17/25 to Resolution Counseling & Family Services

Sincerely,

Denisse Arcos, LCSW (she/her/ella)
Assistant Vice President of Foster Care – Bronx Region
Child Welfare & Behavioral Health Division
The New York Foundling
501 Southern Blvd. |Bronx, NY 10455



Empowering Children
and Families. Since 1869