UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2025 NOV -4  PM 4: 50

JATHIYAH VALENTINE,
Plaintiff,
v.
QUEBEC YOUTH PROTECTION SERVICES, et al.,
Defendants.
Case No. 25-CV-5247 (ER)

## SUPPLEMENTAL DECLARATION OF JATHIYAH VALENTINE REGARDING CURRENT EMERGENCY STATUS OF AV

I, Jathiyah Valentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

### CURRENT EMERGENCY - NO CONTACT WITH AV

1. I am filing this supplemental declaration to inform the Court of the current emergency situation regarding my daughter Amerah Valentine.
2. **I currently have NO ACCESS to Amerah Valentine whatsoever.**
3. **I am receiving NO VISITS with my seven-month-old daughter.**
4. Amerah Valentine was 11 days old when she was taken from me on March 25, 2025.
5. She is now seven months old, visits were stopped since .
6. She has spent the vast majority of her life separated from me, her mother.

### THE BROKEN PROMISE OF DAILY VISITS

7. At an early court hearing in the New York Family Court proceedings, the judge verbally stated that I would have daily visits with AV for four hours per day.
8. This was stated in open court.
9. I had legal representation at that hearing by Emily Herder of NDS.
10. My attorney and I agreed to this visitation arrangement.
11. The judge approved it verbally.
12. **However, this visitation schedule was NEVER written into a court order.**
13. **It was never implemented.**
14. I have repeatedly asked the attorney to put the visitation order in writing.
15. I have repeatedly asked for enforcement of the verbal order, nothing was done.
16. At a later hearing ACS asked for supervised visits for 3 days a week for 2 hours and was given a court order automatically, now ACS has requested no visits and to issue a restraining order based on false allegations that I knew where AV was residing thought

I submitted proof of my call to abuse registry stating I did not know, which they contradict..

17. As a result, I am now receiving no visits at all with my infant daughter who is now at the Emergency room after suffering since last Wednesday, I'm being notified today with no opportunity to see her and oversee her care to advocate for her wellbeing.

## REQUESTS FOR SUPPORT SERVICES IGNORED

18. I have repeatedly asked the judge for the following: a. **Assignment of a social worker** to work with me on reunification b. **Therapeutic visits** with AV to help maintain our bond and address attachment concerns, and agency hostility c. **Regular, consistent visitation schedule** in writing so it can be enforced d. **Immediate return of AV** to my care given the harm being done to her in foster care despite frequent reports to the judge and calls to the state registry abuse hotline.

19. **None of these requests have been granted.**
20. **None have even been seriously considered.**
21. The court simply ignores my pro se filings and requests and differs to ACS desires.

## MEDICAL RIGHTS BEING VIOLATED

22. As AV's mother, I retain my parental rights over her medical care.
23. No court has terminated my parental rights.
24. I have informed ACS and NYF of my choice of medical provider for Amerah Valentne.
25. **They have refused to take Amerah Valentine to the medical provider of my choice.**
26. They claim I must sign HIPAA authorization forms before they will change her provider.
27. **This is backwards - as her legal parent, I should be able to designate her provider without needing to authorize them to share information.**
28. They are using HIPAA as an excuse to maintain control over Amerah Valentine's medical care and exclude me from decisions.
29. Given that Amerah Valentine has:
- Been sexually abused in foster care
- Undergone unnecessary surgery
- Is showing severe developmental delays
- Has been moved six times in six months
- Is consistently showing neglect to physical hygiene
- Has injuries and bruises on her
- ACS has been reporting unsubstaniated false allegations
- Agency has allowed negligence and is actively hostile towards the mother in reunification
- Amerah Valentine was taken without the necessities of Imminent Danger, without a court order and under the threat of arrest. A remand was signed to keep the

baby in ACS care, without any safety planning, preventative services offered or less such remedies.
- The judge was wrongfully ruled that the agency has made reasonable accommodations in regard to the permanency planning and evidentiary hearing without admitting the evidence with contradicts ACS claims for the need to keep AV in fostercare and away from her mother. [etc.]

30. **I need her to be seen by a medical provider I trust who will properly evaluate her while I am present and to be check while I am present for sexual abuse.**

31. ACS and NYF are preventing this.

## SERVICE PLAN DESIGNED TO FAIL

31. ACS eventually provided me with a service plan on September 23rd, 2025 - six months after removing AV.

32. The service plan lists 2 referrals and services for anger management and therapy that I must complete-which I have already completed that they refuse to acknowledge.

33. **However, they do not tell me in advance when appointments they scheduled are.**

34. Instead, I receive phone calls from therapy offices or service providers saying "your appointment is today" with no prior notice.

35. I cannot arrange my schedule, transportation, or childcare (for my other obligations) with same-day notice.

36. When I miss appointments because I was given no advance notice, ACS uses this against me as "non-compliance" with the service plan.

37. **This is a setup for failure.**

38. A genuine reunification effort would involve:
- Giving me the list of required services, finding providers near me and acknowledging what I already have done
- Helping me schedule appointments at times that work for me
- Providing reasonable notice (at least a week) before appointments
- Working with me to overcome barriers to attendance

39. Instead, ACS is creating barriers and then blaming me for not overcoming them.

## ACS IS OBSTRUCTING REUNIFICATION, NOT SUPPORTING IT

40. New York law requires that ACS make "reasonable efforts" to reunify families.

41. Under ICWA (which applies because AV and I are Native American), ACS must make "active efforts" - which is an even higher standard than reasonable efforts.

42. **ACS is making NO efforts to reunify me with AV.**

43. In fact, ACS is actively obstructing reunification by: a. Refusing to provide regular visitation b. Refusing to implement the court's verbal visitation order c. Scheduling service plan appointments without notice d. Using missed appointments (caused by their lack of notice) against me e. Refusing to change AV's medical provider to my choice f. Blocking my emails and refusing to communicate about AV's wellbeing g. Making false

allegations (like claiming I knew the foster home address) h. Coordinating with Florida defendants to place Amerah Valentine with my aunt whom I am in an active custody and criminal proceeding against. Failing to assess friends, and family members I proposed as alternative placements

44. **These are not the actions of an agency trying to reunify a family.**

45. **These are the actions of an agency trying to permanently separate a mother from her child.**

## THE LETTER TO FLORIDA - PROOF OF CONSPIRACY

46. The most damning evidence of ACS's true intentions is the letter they wrote to my aunt Ella Baker in Florida.

47. In this letter, an ACS caseworker stated that **AV would be placed with my aunt via ICPC** (Interstate Compact on the Placement of Children).

48. ICPC is the formal process for placing a child in foster care across state lines.

49. **This letter was written without any court approval and hearing.**

50. **There has never been a hearing in New York about placing AV with my aunt.**

51. **I was never notified of any such plan.**

52. **I was never given an opportunity to object.**

53. **The service plan contradicts this letter.** The service plan states that my aunt is only "a possibility" for placement "in the event that [I] don't complete [my] service plan."

54. But the letter to my aunt speaks of placing AV with her as though it's already decided.

55. **This proves ACS has already decided to give AV to my aunt and is just going through the motions with the service plan.**

56. **This also proves the conspiracy between ACS in New York and the defendants in Florida.**

57. They are coordinating to keep all my children away from me.

## MY AUNT IS NOT SUITABLE FOR PLACEMENT

58. **In recent Florida court filings, my aunt has stated that my three older children in Florida "may need to be given to her son" (my cousin) because "they are becoming too much for her."**

59. If my aunt cannot handle the three children she already has, how can she possibly be considered for placement of a fourth child - an infant with special needs due to the abuse and neglect she has suffered?

60. The answer is: she cannot.

61. **The only reason ACS is considering her is to keep AV away from me, not because she is a suitable placement.**

62. I have repeatedly told ACS I do NOT want my children placed with my aunt.

63. My aunt:
- Illegally took my three older children without U.S. legal authority

- Enrolled them in school without parental consent
- Refused to allow me contact with them
- Filed false police reports against me
- Is now admitting she cannot handle them

64. **This is not a person who should have custody of any of my children.**

## DISCRIMINATORY TREATMENT

65. The New York Family Court is requiring the father of my children to submit to DNA paternity testing.
66. The father is listed on AV's birth certificate.
67. Nevertheless, the court is requiring proof of paternity.
68. **However, my aunt Ella Baker in Florida never had to submit to DNA testing.**
69. **The Florida court never required her to prove she is actually the great-aunt of my three older children.**
70. The court simply accepted her word that she is related to them.
71. **This is discriminatory treatment.**
72. **If DNA testing is required for parents, it should also be required for relatives claiming custody rights.**
73. The fact that parents are held to a higher standard of proof than non-parents demonstrates the bias against me.

## THE HARM TO AV CONTINUES

74. As I stated in my primary declaration, AV is suffering severe harm in foster care.
75. To summarize the ongoing harm: a. **Sexual abuse at less than one month old** b. **Six moves in six months**(extreme instability) c. **Unnecessary surgery** performed against my wishes d. **Severe developmental delays** - cannot lift head, roll over, or perform age-appropriate motor skills e. **Physical neglect** - poor hygiene, diaper rash, unkempt appearance f. **Denial of proper medical evaluation** - ACS refuses to get Early Intervention evaluation despite my requests
76. **Every day AV remains in foster care, she is at risk of further abuse and her developmental delays worsen.**
77. The critical window for early childhood development is very short.
78. Infants who do not receive proper stimulation and care during the first year of life can suffer permanent developmental harm.
79. **AV is six months old - we are already halfway through this critical window.**
80. **If she is not returned to my care or at minimum properly evaluated and treated, the harm may be irreversible.**

## I HAVE COMPLETED SERVICE PLAN REQUIREMENTS

81. Despite all the obstacles ACS has placed in my way, I have completed the requirements in the service plan.
82. I have attended appointments when given proper notice.

83. I have engaged with service providers.
84. I have done everything asked of me.
85. My home has been assessed and found to be "safe, well-maintained, and clean."
86. **There is no legitimate reason for AV to remain in foster care.**
87. The only reason she remains is because ACS is determined to keep her from me and place her with my aunt in Florida.

## IMMEDIATE RELIEF IS NECESSARY

88. **This Court must intervene immediately because:** a. **AV is in immediate danger** of further abuse and permanent developmental harm b. **Every day of delay causes irreparable damage** to her development and our bond c. **The state courts are not providing relief** - they ignore my filings and requests d. **There is an ongoing conspiracy** between ACS and Florida defendants e. **ACS has already decided to give AV to my aunt** despite her being unsuitable f. **I am being denied my constitutional rights** as a parent g. **AV's rights under ICWA are being violated** h. **I have completed service plan requirements** but AV is still not returned

89. **Without this Court's intervention, I will lose my daughter forever and she will continue to suffer harm.**

90. I respectfully request this Court: a. **Order AV's immediate return** to my custody b. In the alternative, **order immediate comprehensive evaluation** of AV by independent medical and developmental specialists c. **Order immediate visitation** on a specific schedule in writing d. **Order ACS to cease coordination** with Florida defendants regarding placement e. **Order ACS to assess** the family members I have proposed for placement f. **Order ACS to comply with ICWA** requirements g. **Prohibit placement** of AV with Ella Baker h. **Order ACS to provide** advance notice of all service plan appointments i. **Order the medical provider change** I have requested j. **Grant any other relief** necessary to protect AV and my parental rights

## CONCLUSION

91. I declare under penalty of perjury upon signature that every thing I have written is true to the best of my knowledge

Jathniyah Valentine
Jathniyah Valentine
November 4th, 2025
419 W 17th St. #216
NY, NY 10011